IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FRANK BRYAN,

    Plaintiff,

vs.

    Case No. C2-05-010
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge Mark R. Abel

JACOBSON DISTRIBUTION CO.,

    Defendant.

## OPINION AND ORDER

Plaintiff, Frank Bryan, brings this diversity lawsuit seeking damages from his former employer, Defendant, Jacobson Distribution Co., for injuries that allegedly resulted from an intentional tort involving a workplace injury. This matter is before the Court for consideration of Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment as to Defendant's Second through Eleventh Affirmative Defenses. For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is granted. Defendant's Motion for Summary Judgment is granted.

### I.

In his Complaint, Plaintiff alleges that Defendant, Jacobson Distribution Company, formerly known as Bekins Distribution Center ("Defendant" or "Jacobson"), and it supervisors knew that its employees used "picker/lifts" with defective retractable lifelines to retrieve materials from the upper racks of the warehouse. Plaintiff further alleges that Jacobson knew that the practice would forseeably cause personal injuries, but it nonetheless required its employees to continue to perform

the dangerous task. On October 7, 2003, Plaintiff suffered injuries to his right ring finger using a picker/lift with a defective retractable lifeline to retrieve materials from the upper racks of the warehouse.

Jacobson is a large distribution facility that handles American Standard products. Jacobson employees handle inbound shipments and fill outbound orders. Plaintiff began his employment at the Jacobson warehouse in 2003 as a forklift operator, picker/lift operator, and pallet jack operator.

At the date of his injury, October 7, 2003, Plaintiff worked for Jacobson as a warehouse-order filler. As warehouse order filler, Plaintiff had to access products that were situated on pallets above ground level. Plaintiff used a picker/lift to perform those above-ground tasks. Defendant required Plaintiff to wear a five-point safety harness that worked as a safety belt when working above ground level using a picker/lift. When Plaintiff wore the safety harness, he was able to move around, but in the event of a fall, the belt stopped at a certain point to prevent a full fall to the ground.

On October 7, 2003, Plaintiff began his shift at 12:00 a.m., which was scheduled to end at 12:00 p.m. On this date, Paul Alexander was acting as Plaintiff's supervisor. Alexander directed Plaintiff to use the picker/lift No. 10.

Prior to working on any piece of equipment, Jacobson's safety program required workers such as Plaintiff to fill out an inspection, or preventative maintenance sheet for that particular piece of equipment in order to record any malfunctions, maintenance issues, or defects with the equipment. Preventative maintenance sheets filled out during the afternoon and evening shifts were collected by maintenance personnel the following morning and addressed any need for repair. (Bryan Dep, at p. 54-55.)

On the date of his injury, at the beginning of his shift, Plaintiff completed a maintenance sheet and indicated a problem with the retractable line on the safety harness on picker/lift No. 10. (Bryan Dep., at p. 72.) He noted a problem with the safety belt extending out, but not retracting. Plaintiff does not recall communicating this problem to his supervisor, Paul Alexander, that night.

Prior to the date of Plaintiff's accident, Jacobson received complaints regarding the broken retractable line on picker/lift No. 10 as evidenced by inspection sheets filled out by employees and statements made by Defendant's supervisors. (Gainey Dep., at p.18[1].) Plaintiff completed a preventative maintenance sheet for picker/lift No. 10 on September 29, 2003 indicating that the belt was broken. The record contains no further documents or any maintenance sheets related to lift No. 10 between September 29, 2003 and October 7, 2003.

Plaintiff's injury occurred in the first hour of his shift when he tried to assist his co-workers in freeing a sled and pallet with a forklift by climbing into an above-ground metal rack system. He was working at a height approximately 6 feet off the floor. (Maul Report, at p. 1.) Plaintiff did not tell his supervisor, Paul Alexander, that he was going to climb into the rack.

The record contains contradicting testimony as to whether Plaintiff was wearing the safety belt at the time of his injury. Plaintiff testified that he was wearing the safety belt. The only witnesses to the accident, Brian Gainey and Michael Langley, however, testified that Plaintiff was not wearing the safety belt. (Gainey Dep., at pp. 32–34; Langley Dep., at 19–21.)

---

[1] Gainey could not recall which, as among lift No. 10 or 11, had a problem with the safety belt "jamming" in the sense that it would extend only a certain amount of lanyard before it locked up. (Gainey Dep., at 18.) Gainey indicates that supervisors were made aware of the defect, the problem would be fixed and the retractable line would be brought back out into production. (*Id.*)

Plaintiff's injury occurred when he was climbing into the metal rack, lost his footing, and slipped while walking on the metal beams. To prevent his fall, Plaintiff stuck out his arm out and slammed his finger into a metal, vertical rack. As a result, Plaintiff alleges that he dislocated his finger. Plaintiff was able to stabilize himself and did not fall.

Plaintiff contends that he stuck his arm out to grab something to prevent his fall. Plaintiff testified that "regardless if the belt worked or not, it's a natural reaction to try and catch yourself if you fall." (Bryan Dep., at 87.) Jacobson's expert, Dr. Patricia David, also testified that Plaintiff's reaction of throwing his right hand out to catch himself was a natural, normal and self-protective reaction. (David Report, p. 2.)

In his deposition, Plaintiff testified that he did not reach the end of the safety belt before he stabilized himself. His belt was extended approximately four feet of an available six to seven feet of lanyard at the time he slipped. (Bryan Dep. at 86). Plaintiff fortunately never fell from the metal rack, and therefore the safety belt did not extend to its full capacity or engage to break his fall. (Bryan Dep., at p. 89-90.) Indeed, the purpose of the fall arrest system, which was composed of a safety belt and retractable lanyard, is to permit the lift operator freedom of movement while preventing the operator from falling to the ground. (Ogle Report, at p.2.) It was not designed to hold the operator in a static position to prevent a slip. David testified that Plaintiff's injury could not have been prevented even if the retractable lanyard was working properly. (*Id.*)

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

-4-

P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to

be insufficient to survive summary judgment).

### III.

**A.     Plaintiff's Motion for Partial Summary Judgment and to Strike Defendant's Second through Eleventh Affirmative Defenses**

Plaintiff moves for summary judgment as to Defendant's affirmative defenses two through eleven arguing that such defenses fail as a matter of law or are otherwise unavailable to an employer in a common law intentional tort claim. Defendant does not oppose Plaintiff's Motion for Partial Summary Judgment and relies instead of the grounds for its own Motion for Summary Judgment. Without objection from Defendant, Plaintiff's Motion for Partial Summary Judgment and to Strike Defendant's Second through Eleventh Defenses is **GRANTED**.

**B.     Defendant's Motion for Summary Judgment[2]**

This case calls upon the Court to determine whether the facts in the record are sufficient, as a matter of law, to allow the issue of whether the employer committed an intentional tort to go to a jury. The Court concludes that the facts are insufficient and Defendant's Motion is accordingly granted.

Generally, the Ohio Workers' Compensation Act, Ohio Rev. Code Chapter 4123, provides the exclusive remedies available to employees who are injured at the workplace. The Workers' Compensation Act contains certain limited exceptions, including one for injuries resulting from an employer's intentional tort upon an employee.

---

[2]     Defendant requests that the Court strike Plaintiff's Memorandum in Opposition to its Motion for Summary Judgment because Plaintiff failed to comply with S.D. Ohio Civ. R. 7.2(a)(3) by filing a brief in excess of twenty pages without providing a combined table of contents and accurate summary of his arguments. Defendant has not demonstrated any prejudice by Plaintiff's failure to comply with Rule 7.2(a). Defendant's request to strike the document is accordingly denied.

When an employee is injured and establishes that his or her employer intended to cause the employee to be injured, that employee may recover additional compensation under a theory of intentional tort. *Sanek v. Duracote Corp.*, 43 Ohio St. 3d 169, 539 N.E.2d 114, 117 (Ohio 1989); *VanFossen v. Babcok & Wilcox Co.*, 36 Ohio St. 3d 100, 112, 522 N.E.2d 489, 500 (Ohio 1988).[3]

To maintain an intentional tort action against his employer, Plaintiff must prove each of the following:

(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;

(2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and

(3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115, 570 N.E.2d 1108 (Ohio 1991) (syllabus); *see also Johnson v. BP Chemicals, Inc.*, 85 Ohio St.3d 298, 707 N.E.2d 1107 (Ohio 1999) (holding Ohio legislation superseding the decision in *Fyffe* unconstitutional and reinstating *Fyffe*). Evidence beyond that required to prove either negligence or recklessness is necessary to establish an intentional tort by an

---

[3] Currently, Ohio Revised Code § 2745.01 provides as follows:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

employer. A plaintiff must demonstrate that the employer "(1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 532 N.E.2d 753, 756 (Ohio 1988). It is not enough that the harm was likely to occur. *Jones v. VIP Development Co.*, 15 Ohio St.3d 90, 472 N.E.2d 1046, 1051 (Ohio 1984). Nor is it enough that there was a high risk that harm would occur. *Van Fossen*, 36 Ohio St.3d 100, 522 N.E.2d at 504. Rather, it must have been substantially certain to occur. *See id.*

As in any tort case, however, the plaintiff must also demonstrate that the employer's conduct was the proximate cause of his or her injuries. "It is not sufficient to demonstrate that injury was substantially certain to occur by some act or omission of the employer: the plaintiff must prove a nexus between the act or omission of the employer and her injury. The test set out in . . . *Fyffe* expressly applies only to establish intent for purposes of proving an intentional tort: proving substantial certainty of injury does not prove the entire cause of action." *Crum v. Lenkei Bros. Cabinet Co.*, No. 94-CA-6, 1994 WL 528035 (Ohio Ct. App. Sept. 19, 1994); *see also Posen v. Sitecon L.L.C.*, No. 8639, 2006 WL 1774131*4 (Ohio Ct. App., June 22, 2006)("Courts continue to require a plaintiff in an intentional tort case to establish the proximate cause of his injuries.")(collecting cases). An employee who brings an intentional tort action against his or her employer retains the burden of proving that the employer's acts proximately caused the injury. *Raines v. Rubbermaid Inc.*, 112 Ohio App. 3d 384, 389-90, 678 N.E.2d 988, 991 (Ohio Ct. App. 1996).

Here, Plaintiff's Complaint alleges that Defendant engaged in an intentional tort against Plaintiff as follows:

-8-

(a) Bekins knew of the existence of a dangerous process, procedure, instrumentality, or condition at the premises which arose from operation of a picker/lift in which the retractable lifeline that was attached was defective or malfunctioning;

(b) From past experience, Bekins' management at the premises knew that supervisors at the premises had observed and condoned or ratified Bekins' employees' use of the picker/lift's defective or malfunctioning retractable lifeline to retrieve materials from the upper racks in the warehouse; and Bekins' management knew that the use of the picker/life's [sic] defective or malfunctioning retractable lifeline would foreseeably cause bodily injury to an employee of Bekins who would use the picker/lift and the attached retractable lifeline. . . .

(Complaint, ¶ 6(a)-(b).) Plaintiff's claim, therefore, relates only to the alleged defective retractable line on the safety-belt located on the lift. He alleges that, "as a direct and proximate result" of this intentionally tortious conduct, Plaintiff suffered injuries to his right ring finger. In order to establish his claim for an intentional tort, Plaintiff, therefore, must prove a causal connection between his injury and the defect of which Jacobson allegedly had knowledge.

Reasonable minds may dispute whether Jacobson knew of the existence of the allegedly dangerous condition of the retractable lifeline within its business operation. Furthermore, reasonable minds may dispute whether Jacobson required Plaintiff to work on lift No. 10 which contained the allegedly defective safety device. The Court concludes, however, that Plaintiff has adduced no evidence to suggest a nexus between Jacobson's act or omission with respect to the retractable lifeline and his injury.

Even if the issue of whether Plaintiff was wearing his safety belt were undisputed, the record contains no evidence that the retractable lifeline could have prevented Plaintiff's injury. The purpose of the retractable safety belt is to permit the lift operator to more freely while preventing the operator from falling to the ground. (Bailey Dep., at p. 26; Ogle Report, p. 2.) The safety belt was not

designed to prevent a slip or to arrest a lift operator from losing his or her balance. Plaintiff admitted that he did not fall. (Bryan Dep., at 86-90.) His injury occurred when he reflexively reached out to restore his balance and struck his hand against a vertical metal beam. (Bryan Dep., at p. 87.) Jacobson's purported work order requiring Plaintiff to use the lift with the defective safety belt, therefore, did not proximately cause his injuries. Because the allegedly broken safety belt had no bearing on Plaintiff's injury, Jacobson could not have known with "substantial certainty" that Plaintiff was likely to slip and hurt his finger trying to catch himself.

Because Plaintiff fails to establish an essential element of his claim, Defendant's Motion for Summary Judgment is granted.

### IV.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 28) is **GRANTED.** Plaintiff's Motion for Partial Summary Judgment and corresponding Motion to Strike Affirmative Defenses (Doc. # 29) is **GRANTED.** The Clerk is directed to enter judgment in favor of Defendant and remove this case from the Court's pending cases and motions list.

**IT IS SO ORDERED.**

9-29-2006
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**